[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF TRIAL REFEREE
A. FINDINGS OF FACT.
1. The plaintiff, Harold Weiner, doing business as Westgate Shopping Center, and the defendant, Contemporary Expressions, Inc., Thomas Paul Azzara, President, entered into a written lease dated June 6, 1984, when the defendant leased from the plaintiff certain premises located at the Westgate Shopping Center, Norwich, Connecticut, hereinafter referred to CT Page 2806 as the "premises". Said written lease was for an initial term of two (2) years together with certain options for renewal. The underlying lease and all renewals and addendums thereto were personally guaranteed by the president of Contemporary Expressions, Inc., Thomas Paul Azzara of 46 Greentree Drive, Glastonbury, Connecticut.
2. Pursuant to the terms of the lease, the tenant agreed to pay a total annual base rent of $18,150.00 in monthly payments of $1,512.00 each, with the primary business of the tenant being the use of the premises for the operation of a furniture store.
3. The defendants had an additional obligation under the lease for common area and maintenance charges (C.A.M.) in the total annual amount of $1,650.00 which tenant agreed to pay in equal monthly installments.
4. Pursuant to the terms of the lease, defendants agreed to pay the entire amount of any increase in real estate taxes assessed on the demised premises over the amount of the taxes assessed against said premises for the assessment of October 1, 1984. The amount due by the defendants pursuant to said lease was to be determined by applying the same ratio which the area of the demised premises bore to all stores in the shopping center, being 16% to the entire increase in such, taxes. Said lease further provided that, "upon receipt of each bill for real estate taxes assessed against the shopping center, Landlord shall advise Tenant of the amount thereof and the portion thereof, if any, payable by Tenant and Tenant shall pay said portion to Landlord upon demand."
5. Pursuant to the terms of paragraph 13 of said lease the tenant could, at its expense, make only such alterations and improvements to the demised premises and install interior partitions as it may require, if the landlord's approval were first obtained. Such improvements and alterations had to be done in a workmanlike manner and in keeping with all building codes and regulations. They could in no way harm the structure of the demised premises, and at the expiration of the lease, or any extension thereof, the tenant, at its own expense, was to restore the demised premises to its original condition.
6. However, in addition to the lease and a first addendum thereto, the parties entered, on or about the date of the execution of the original lease, a second addendum. According to paragraph 3 of the second addendum, the landlord granted permission to the tenant to make the alterations j, and improvements to the demised premises described in a certain list furnished by the tenant to the landlord dated June 4, CT Page 2807 1984. Further, said second addendum limited the tenant's obligation to restore the premises to the condition the premises were in upon completion of the referenced improvements and alterations, reasonable wear and tear excepted, notwithstanding the provisions of paragraph 13 of the original lease recited in the previous paragraph hereto.
7. Pursuant to the terms of the lease, if the plaintiff were to institute an action against the tenant based upon default or defaults under the lease, or if the landlord cured any such default or defaults, the defendant was to reimburse the plaintiff for the expenses of attorney's fees and disbursements so far as the same are reasonable in amount.
8. On or about April 23, 1984, the defendant Contemporary Expressions, Inc. sent written notice to the plaintiff of its intent to exercise the three (3) year option, "Per Addendum, page 1" of the existing lease.
9. On or about July 25, 1986, plaintiff and defendant executed an extension of lease whereby the defendant agreed to an extension of the existing lease for an additional three (3) years through August 31, 1989, on the terms and conditions contained in the original lease, except that the monthly rental was to be $1,812.50, rather than any escalating amount. The provisions regarding additional rent, taxes and the like were to be continued as set forth in the original lease.
10. On said date, the defendant, Azzara, again personally and unconditionally guaranteed the terms of the extension of the lease.
11. In May of 1988, plaintiff received a letter, from defendant, Mr. Azzara, indicating that the defendant Contemporary Expressions was going out of business and that its going out of business sale would start in June and would last approximately ninety (90) days. The letter from the defendant Azzara concluded with the following statement: "To alleviate any fears you might have, we are fully aware of the obligatory terms of our lease and we will fulfill our obligation."
12. Defendants made their last payment of rent under the terms of the extension of lease in October of 1988 and no subsequent payments of rent were received. The term of the lease as extended terminated in September of 1989.
13. At some time in November of 1988, the plaintiff went to the premises to observe their condition. At the time, the premises were closed and a sign was placed in the window of the premises which contained Mr. Azzara's phone number and CT Page 2808 indicated that the premises were for rent. The premises were abandoned and locked.
14. Some time in August of 1988, Donald Darin of Arrow Paper and Supply Company of Norwich telephoned the defendant Thomas Azzara, and inquired about reletting the leased premises, and further requested the telephone number of the plaintiff, which defendant provided.
15. From August of 1988 until some time in November or December of 1988, Donald Darin and the plaintiff negotiated the terms and conditions of a reletting of the leased premises.
16. Plaintiff and Arrow Paper and Supply Company arrived at a preliminary agreement, but subsequently during negotiations involving lease provisions, the said Arrow Paper and Supply Company lost interest in the property and decided not to go through with the rental.
17. Following Arrow Paper's failure to agree to lease terms with the plaintiff, plaintiff listed the property with the Boyer Agency and executed a listing agreement.
18. Pursuant to said listing agreement, the Boyer Agency entered the premises and put up a sign regarding rental. The plaintiff subsequently received several inquiries regarding the property, but was never able to relet the premises during the term of the defendants' lease extension.
19. The defendants' security deposit in the amount of ONE THOUSAND FIVE HUNDRED TWELVE AND 50/100 DOLLARS ($1,512.50) together with accrued interest has not been returned to the defendant or applied as a credit against any sums claimed due by the plaintiff.
20. The plaintiff claims that the defendants owe him reimbursement for taxes on the premises for the assessment years beginning October 1, 1986, October 1, 1987, and October 1, 1988. The plaintiff only provided evidence at trial that it gave notice to the defendant of the apportionment of the taxes and demand for same for the assessment year commencing October 1, 1986. The defendant denied ever receiving any notice of taxes due or their apportionment. Further, the 1986 notice and demand used the 1982 assessment list as the base year, not the 1984 list as required by the second addendum. The correct tax adjustment for 1986 is as follows:
 1986 $12,417.79 1984 11,093.56 ---------- CT Page 2809 Increase 1,314.23 x .16 ---------- $ 210.28
21. The plaintiff has incurred $4,333.00 in attorney's fees in the prosecution of this action, and these fees accord with customary and reasonable hourly rates and charges.
22. The lease and all addendums and extensions thereof were prepared and negotiated by the plaintiff's son, Ronald Weiner, an attorney admitted to practice law in the State of Connecticut. Ronald Weiner was not present or available at trial.
23. Prior to entry of the premises, defendants performed extensive repairs and renovations to same. These repairs and renovations were undertaken with the knowledge and approval of the plaintiff, as expressed by the plaintiff's son, Ronald Weiner. A sketch of the physical changes to the premises had been presented to the plaintiff by the defendants. No repairs or renovations of any significance were undertaken by the defendants after the defendants entered the premises.
24. In addition to back rent, C.A.M. charges, taxes and attorneys fees, the plaintiff claims damages for the costs of hiring an electrician, repairing the water heater, redesigning the premises, rebating rent to a subsequent tenant to allow for interior renovations, and carpentry costs for work on partitions and raised floors left by the tenant. All of this work pertained to correcting or changing defendants' improvements performed in 1984 with the knowledge and consent of the plaintiff or the plaintiff's son Ronald Weiner.
B. CONCLUSIONS OF THE LAW.
1. The defendants defaulted on a certain extension of lease, failing to pay rent and common area and maintenance charges on same from November of 1988 to September of 1989.
2. After defendants' default, plaintiff made reasonable efforts under the circumstances to mitigate. Plaintiff under took good faith negotiations with Arrow Paper and Supply Company to relet the premises during the defendants' term, and through no fault of the plaintiff, these negotiations did not lead to an executed lease. Plaintiff also attempted to mitigate through listing of the premises by a realtor.
3. Under the terms of the lease, defendants owe plaintiff for reasonable attorneys' fees incurred in the CT Page 2810 enforcement of the lease, and plaintiff incurred $4,333.00 in such fees, which fees were based on reasonable and customary time charges and are reasonable under the circumstances.
4. Under the terms of the second addendum, defendants were only obligated to repair and restore the premises to the conditions which existed on the date the plaintiff occupied same. Under said addendum, as negotiated by plaintiff's son, Ronald Weiner, Esq., plaintiff waived any claim under the lease addendum for reimbursement for correcting renovations and repairs performed by the plaintiff prior to taking occupancy, as these renovations and repairs were expressly approved by the plaintiff.
5. Defendants only owe a portion of real estate taxes to the plaintiff for the 1986 assessment year, as the defendant did not give notice or demand to the plaintiff for the 1987 and 1988 years. Further, the apportionment in 1986 was based on the 1982 assessment list as the base year, not the 1984 list as required by the second addendum, and therefore must be reduced accordingly.
 6. The defendants owe to plaintiff the following sums: Rental, 11/88-9/89 plus
C.A.M. charges for the same period: $18,125.00
Legal interest on same: 2,310.35
Taxes for assessment list 10/1/86: 210.28
Legal interest from September 1, 1987 on same: 92.88
 Attorney's fees: 4,333.00 --------- TOTAL $24,861.23
7. The plaintiff filed an offer of judgment herein on February 27, 1990, in the amount of $23,000.00. As the recommended judgment exceeds the offer by $1,861.23, the plaintiff is entitled to 12% interest from the date of the filing of the complaint, November 20, 1989, or $6,712.53, as of February 20, 1992. CGS 52-192a.
8. As the judgment already includes attorney's fees, the Trial Referee recommends against awarding additional attorney's fees of $350.00 pursuant to said statute.
9. Total judgment therefore, with interest equals $31,573.76. CT Page 2811
C. RECOMMENDATION.
Judgment should enter for the plaintiff with costs in the amount of $31,573.76.
RESPECTFULLY SUBMITTED, TIMOTHY D. BATES STATE TRIAL REFEREE